UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>KUUHUUB INC., a corporation,<br>25 Adelaide Street East, Suite 1417, Toronto, Ontario, M5C 3A1,<br><br>KUU HUBB OY, a corporation,<br>Kalevankatu 12 A, 00100, Helsinki, Finland, and<br><br>RECOLOR OY, a corporation,<br>Kalevankatu 12 A, 00100, Helsinki, Finland,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR CIVIL PENALTIES, PERMANENT INJUNCTION, AND OTHER EQUITABLE RELIEF** |

Plaintiff, the United States of America, acting upon notification and on behalf of the Federal Trade Commission ("Commission" or "FTC"), for its Complaint alleges:

1. Plaintiff brings this action under Sections 5(a)(1), 5(m)(1)(A), 13(b), 16(a)(1), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), 56(a)(1), 57b, and Sections 1303(c) and 1306(d) of the Children's Online Privacy Protection Act of 1998 ("COPPA"), 15 U.S.C. §§ 6502(c), 6505(d), to obtain monetary civil penalties or other compensation, a permanent injunction, and other equitable relief for Defendants' violations of the Children's Online Privacy Protection Rule ("Rule" or "COPPA Rule"), 16 C.F.R. pt. 312, and Section 5 of the FTC Act.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

3. Venue is proper in this District under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b)–(c) and 1395(a).

## SECTION 5 OF THE FTC ACT

4. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

## CHILDREN'S ONLINE PRIVACY PROTECTION RULE

5. Congress enacted COPPA in 1998 to protect the safety and privacy of children online by prohibiting the unauthorized or unnecessary collection of children's personal information online by operators of Internet websites and online services. COPPA directed the Commission to promulgate a rule implementing COPPA. The Commission promulgated the COPPA Rule on November 3, 1999, under Section 1303(b) of COPPA, 15 U.S.C. § 6502(b), and Section 553 of the Administrative Procedure Act, 5 U.S.C. § 553. The Rule went into effect on April 21, 2000. The Commission promulgated revisions to the Rule that went into effect on July 1, 2013. Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57(a)(d)(3), a violation of the Rule constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

6. The Rule applies to any operator of a commercial website or online service directed to children under 13 years of age that collects, uses, and/or discloses personal information from children, and to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personal information from children. The definition of a "Web site or online service directed to children" includes, among other things, a portion of a website or online service that is targeted to children. 16 C.F.R. § 312.2. The term

"personal information" means "individually identifiable information about an individual collected online," and includes, among other things, "first and last name;" photos that "contain a child's image;" other "[i]nformation concerning the child . . . that the operator collects online from the child" (e.g., the content of comments posted by users) and combines with identifying information; and a "persistent identifier that can be used to recognize a user over time and across different Web sites or online services," such as a "unique device identifier." *See* 16 C.F.R. § 312.2.

7. Among other things, the Rule requires an operator to meet specific requirements prior to collecting, using, or disclosing children's personal information online. 16 C.F.R. §§ 312.4, 312.5. This includes but is not limited to:

 a) Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures set forth in the Rule;

 b) Providing clear, understandable, and complete notice of its information practices, including specific disclosures, directly to parents; and

 c) Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personal information from children.

8. The Rule prohibits the collection of persistent identifiers for behavioral advertising absent notice and verifiable parental consent. 16 C.F.R. §§ 312.2, 312.5(c)(7). Behavioral advertising, which also is referred to as personalized, targeted, or interest-based

advertising, involves the tracking of a consumer's online activities in order to deliver tailored advertising based on the consumer's inferred interests.

## DEFENDANTS

9. Defendant Kuuhubb Inc. is a Canadian corporation with its principal place of business at 25 Adelaide Street East, Suite 1417, Toronto, Ontario M5C 3A1. Kuuhubb Inc. transacts or has transacted business in this District and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Kuuhubb Inc. purposely directed its activities to the United States by advertising, marketing, and distributing mobile applications intended for use by consumers throughout the United States.

10. Defendant Kuu Hubb Oy is a Finnish corporation with its principal place of business at Kalevankatu 12 A, 00100, Helsinki, Finland. Kuu Hubb Oy is a wholly owned subsidiary of Kuuhubb Inc. Kuu Hubb Oy transacts or has transacted business in this District and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Kuu Hubb Oy purposely directed its activities to the United States by advertising, marketing, and distributing mobile applications intended for use by consumers throughout the United States.

11. Defendant Recolor Oy, formerly Sumoing Oy, is a Finnish corporation with its principal place of business at Kalevankatu 12 A, 00100, Helsinki, Finland. Recolor Oy is a wholly owned subsidiary of Kuu Hubb Oy. At all times material to this Complaint, acting alone or in concert with others, Recolor Oy purposely directed its activities to the United States by advertising, marketing, and distributing mobile applications intended for use by consumers throughout the United States.

12. Defendants Kuuhubb Inc. and Kuu Hubb Oy have exercised direct control over Defendant Recolor Oy, including but not limited to signing contracts with third parties on behalf of Defendant Recolor Oy and directing and approving business plans and strategy.

13. Plaintiff's claims against Defendants arise from or relate to Defendants' acts or practices aimed at or taking place in the United States.

## COMMERCE

14. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFINITIONS

15. For purposes of this Complaint, the terms "child," "collects," "collection," "Commission," "disclosure," "Internet," "operator," "parent," "personal information," "obtaining verifiable consent," "third party," and "Web site or online service directed to children," are defined as those terms are defined in Section 312.2 of the Rule, 16 C.F.R. § 312.2.

## DEFENDANTS' BUSINESS ACTIVITIES

### *BACKGROUND ON THE RECOLOR APP*

16. Since at least August 2017, Defendants have operated a popular coloring book app called Recolor ("Recolor App" or "App"). Defendants bill the App as a "coloring book for adults." From August 2017 through February 2019, the App had between approximately 1 million and more than 5 million active users each month in the United States.

17. The Recolor App provides more than 4,000 images that users can digitally color on their mobile devices using a variety of palettes and finishes. The Recolor App's home screen has a library of images for coloring, which is broken down into a few dozen categories, such as

"New," "Free," "Insects," "Popular," "Mandalas," "Animals," "Dark," "Birds," "Barbie," "Movies," and "Romance." Until late 2019, the App also included a "Kids" category that was targeted at children. *See infra* ¶¶ 20–23.

18. The App generates revenue for Defendants through subscriptions, promotional campaigns, and in-app advertising. Defendants offer weekly, monthly, and annual subscriptions for the Recolor App. Among other benefits, a subscription provides access to additional coloring features and removes the in-app advertisements. Defendants do not require users to subscribe to use the Recolor App.

19. In addition to the coloring features, the Recolor App offers social media features that collect personal information from users. *See infra* ¶¶ 24–29. Some parents—unaware of the social media features—may have let their young children use the App. *See infra* ¶¶ 30–32.

### *KIDS CATEGORY*

20. From at least August 2017 until at least August 2019, the Recolor App contained a category of illustrations labeled "Kids" (see screenshot below). In 2019, Defendants added at least 11 new illustrations to the Kids category. As described in Paragraphs 21–23 below, children were the target audience of the Kids category.



21. For most of the categories in the Recolor App, the title literally describes the content of the illustrations in that category. For example, the "Insects" category consists of images of insects. The Kids category, however, did not consist primarily of illustrations of kids. The Kids category generally contained images with content that would appeal to kids, including, for example, My Little Pony animated characters and other cartoonish animals (see images below).






//

22. The Kids category contained illustrations with simpler outlines than those found in most of the other categories. For example, the first image below is an illustration of a unicorn from the "Fantasy" category, while the second image is an illustration of a unicorn from the Kids category. Children would find it easier to color illustrations with simpler outlines.


**Fantasy category**


**Kids category**

23. Illustrations in the Kids category of the Recolor App were popular with users. In the first three quarters of 2019, illustrations in the Kids category were colored more than 1.6 million times total. The illustration below is an example. It was added to the App in the Kids category on March 4, 2019. By August, it had been colored by more than 71,000 unique users. For comparative purposes, four illustrations were added to the "Popular" category from January to August 2019, and only one was colored by more than 71,000 unique users.



### *THE APP'S SOCIAL MEDIA FEATURES*

24. In addition to the Recolor App's coloring book features, the App offers several features that are more commonly found in a social media app.

25. To access these social media features, users must create an account in the app by providing an email address, an account screen name, and an optional user description and profile picture. Users are not required to purchase a subscription in order to create an account.

26. The screen names, user descriptions, and profile pictures of users with accounts are publicly available for others to view.

27. Users with an account can publish pictures to the App's Gallery. This includes pictures that the users themselves have imported, which may be photographs (such as selfies) or images featuring lines of text. Pictures are not reviewed by Defendants before they are published.

28. Users with an account may also like and comment on other users' pictures and follow other users' work. Comments are not reviewed by Defendants before they are published.

29. The App's Gallery is also publicly available on the web, including users' screen names, profile photos, and the content of comments they have posted.

### *CHILDREN USED THE APP AS SOCIAL MEDIA*

30. Users who have downloaded the Recolor App may not expect that a coloring book app will offer social media features. Notwithstanding the recent surge in popularity among adults, coloring is generally understood to be a child-oriented activity. In addition, as described in Paragraphs 21–23 above, a popular category of illustrations was targeted at children. Some parents may have unwittingly let their young children use the App because they have been unaware of the social media features.

31. Indeed, between August 2017 and June 2019, Defendants received, or were made aware of, more than 120 reports by users and parents that children were using the Recolor App. Approximately a dozen of these reports specifically referred to children under 13 years of age.

32. The reports indicate that children have used the Recolor App as a substitute for a social media app without their parents realizing that the App had social media features. Some of the reports claim that children posted selfies and graphic images, used graphic language, engaged in bullying behavior, and interacted with adults.

*BEHAVIORAL ADVERTISING*

33. Through the Recolor App, Defendants allowed the following third-party advertising networks to collect persistent identifiers to serve behavioral advertising: AdMob, AppLovin, Facebook Audience Network, HyprMX, Vungle, and Unity Ads. Defendants did not inform these third-party advertising networks that a portion of the Recolor App was directed to children, and did not instruct or contractually require the advertising networks to refrain from behavioral advertising.

*DEFENDANTS ARE SUBJECT TO THE COPPA RULE*

34. The COPPA Rule applies to operators of websites and online services directed to children that collect personal information, or those with actual knowledge that they have collected personal information from children under 13 years of age. Pursuant to Section 312.2 of the COPPA Rule, the determination of whether a website or online service, or a portion thereof, is directed to children depends on factors such as the subject matter, visual content, language, and use of animated characters or child-oriented activities and incentives.

35. As described in Paragraphs 21–23 above, an assessment of the factors in Section 312.2 of the COPPA Rule demonstrates that a portion of the Recolor App—the category

of illustrations labeled "Kids"—contained content directed to children under the age of 13. Defendants are therefore subject to the COPPA Rule.

### *FAILURES TO COMPLY WITH COPPA*

36.     Through the Recolor App, Defendants collected, used, and/or disclosed (or caused to be collected on their behalf) personal information as defined in the COPPA Rule, including first and last name; photos containing a child's image; the content of comments and user descriptions posted by users that Defendants combined with identifying information; and persistent identifiers.

37.     At no time did Defendants attempt to obtain verifiable parental consent from parents of users of the Recolor App prior to the collection of personal information or provide parents with the COPPA-specified notice of their information practices.

38.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission.

### VIOLATIONS OF THE CHILDREN'S ONLINE PRIVACY PROTECTION RULE

### Count I

39.     Defendants are "operators" as defined by the Rule, 16 C.F.R. § 312.2.

40.     In numerous instances, in connection with the acts and practices described above, Defendants collected, used, and/or disclosed (or caused to be collected on their behalf) personal information from children in violation of the Rule, including by:

      a)     Failing to provide sufficient notice on their online service of the information they collect, or is collected on their behalf, online from children, how

they use such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of the Rule, 16 C.F.R. § 312.4(d);

b) Failing to provide direct notice to parents of the information Defendants collect, or information collected on Defendants' behalf, online from children, how they use such information, their disclosure practices, and all other required content, in violation of Sections 312.4(b) and (c) of the Rule, 16 C.F.R. §§ 312.4(b)–(c); and

c) Failing to obtain verifiable parental consent before any collection, use, and/or disclosure of personal information from children, in violation of Section 312.5 of the Rule, 16 C.F.R. § 312.5.

41. Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Rule constitutes an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## THIS COURT'S POWER TO GRANT RELIEF

42. Defendants violated the COPPA Rule as described above with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

43. Each collection, use, or disclosure of a child's personal information in which Defendants violated the Rule in one or more ways described above constitutes a separate violation for which Plaintiff, the United States of America, seeks monetary civil penalties.

44. Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Public

Law 114-74, sec. 701, 129 Stat. 599 (2015), and Section 1.98(d) of the FTC's Rules of Practice, 16 C.F.R. § 1.98(d), authorize this Court, effective January 13, 2021, to award monetary civil penalties of not more than $43,792 for each violation of the COPPA Rule, including for violations that predate January 13, 2021.

  45. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief to prevent and remedy any violation of any provision of law enforced by the FTC.

  46. Section 19 of the FTC Act, 15 U.S.C. § 57b, authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the COPPA Rule, including the rescission or reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, the United States of America, pursuant to Sections 5(a)(1), 5(m)(1)(A), 13(b), 16(a), and 19 of the FTC Act, 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), 56(a), 57b, and the Court's own equitable powers, requests that the Court:

  A. Enter a permanent injunction to prevent future violations of the FTC Act and the Rule by Defendants;

  B. Award Plaintiff monetary civil penalties from Defendants for each violation of the Rule alleged in this Complaint; and

  C. Award other and additional relief as the Court may determine to be just and proper.

| | |
|---|---|
| Dated: June 30, 2021 | Respectfully submitted, |

| | |
|---|---|
| **FOR FEDERAL TRADE COMMISSION:** | **FOR PLAINTIFF THE UNITED STATES OF AMERICA:** |
| KERRY O'BRIEN<br>Acting Regional Director<br>Western Region San Francisco | BRIAN M. BOYNTON<br>Acting Assistant Attorney General<br>Civil Division |
| EVAN ROSE<br>Attorney<br>Western Region San Francisco<br>901 Market Street, Suite 570<br>San Francisco, CA 94103<br>Tel.: (415) 848-5100<br>Fax: (415) 848-5184 | ARUN G. RAO<br>Deputy Assistant Attorney General<br><br>GUSTAV W. EYLER (D.C. Bar No. 997162)<br>Director<br>Consumer Protection Branch<br><br>LISA K. HSIAO (D.C. Bar No. 444890)<br>Assistant Director<br><br>By: */s/ Marcus P. Smith*<br>Marcus P. Smith (D.C. Bar No. 996721)<br>Trial Attorney<br>Consumer Protection Branch<br>U.S. Department of Justice<br>P.O. Box 386<br>Washington, DC 20044<br>(202) 353-9712<br>marcus.p.smith@usdoj.gov |